FILED
JAMES BONINI
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

10 DEC 15 PM 3: 24

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. |
| | : **1 1 0 C R - - 1 3 3** |
| v. | : **I N D I C T M E N T** |
| | : 18 U.S.C. § 2 **J. DLOTT** |
| (1) FREDERICK REED, | : 18 U.S.C. § 371 |
| a.k.a. "FREAKY FRED" | : 18 U.S.C. § 2314 |
| (2) ROCCO EVANGELISTA, | : 21 U.S.C. § 841(a)(1) |
| a.k.a. "ROCK" | : 21 U.S.C. § 841(b)(1)(A) |
| (3) GARY GILLIAM | : 21 U.S.C. § 846 |
| (4) JACKSON BROOKS PINNELL | : |
| (5) PETER YOUNGER SMITH | : |
| (6) GEORGE PRIMM | : |
| (7) RYAN PRIMM | : FORFEITURE ALLEGATIONS |
| (8) JOHN WAYNE DAULTON | : |
| a.k.a. "CAPTAIN" | : |
| (9) JOHN MYERS | : |

- - - - - - - - - - - - - - - - -

THE GRAND JURY CHARGES THAT:

### COUNT 1

From in or about October of 1993, up to and including the date

of this indictment, in the Southern District of Ohio and elsewhere,

the defendant, **FREDERICK REED, a.k.a. "FREAKY FRED," ROCCO**

**EVANGELISTA, a.k.a. "ROCK," GARY GILLIAM, JACKSON BROOKS PINNELL,**

**JOHN WAYNE DAULTON, a.k.a. "CAPTAIN,"** and others both known and

unknown to the grand jury, including JOSE ALFONSO SILVEYRA, a.k.a.

"JIMMY," WALTER KENNETH BYRD, a.k.a. "KENNY," WILLIAM MARK MUELLER,

EDWARD BURNS, FORREST COFFMAN, JEFF GERACI, JOHN GERACI, TONY

HAMMONS, STANLEY BYRD, JAMES DARST, a.k.a. "BIG JIM," ANDRE RAY

were charged and convicted in Federal Case Number CR-1-06-139(1-

11), did knowingly and intentionally, unlawfully combine, conspire,

confederate, and agree with each other and persons both known and

unknown to the Grand Jury, to possess with intent to distribute in excess of 1000 kilograms of marijuana, a Scheduled I Controlled Substance, in violation of the laws of the United States, to wit; 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

It was a part of the conspiracy that **FRED REED** and a person by the name of "TJ" who is known to the grand jury would arrange with JOSE SILVEYRA and others for large shipments of marijuana to be delivered to them in Arizona.

It was a part of the conspiracy that **REED** and a person by the name of "TJ" who is known to the grand jury would arrange for the large amounts of marijuana to then be transported to the Southern District of Ohio for further distribution.

It was a part of the conspiracy that **REED** and a person by the name of "TJ" who is known to the grand jury would arrange for the proceeds owed from the large amounts of marijuana to be returned to Arizona to SILVEYRA and others.

It was a part of the conspiracy that, after the disappearance of the person by the name of "TJ" who is known to the grand jury, **REED** would return to the Southern District of Ohio and work with WALTER KENNETH BYRD (hereinafter "W.K.BYRD") and MUELLER to further the transportation of marijuana to the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that SILVEYRA would supply W.K.BYRD, MUELLER and others both known and unknown to the grand jury with large amounts of marijuana which was to be transported

2

from Arizona and elsewhere to the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that, even though W.K.BYRD, MUELLER and others were handling the large amounts of marijuana in Arizona, **REED** would continue to serve as an integral part of the drug trafficking organization and maintain a large part of the Ohio customer base.

It was a part of the conspiracy that W.K.BYRD and MUELLER would travel to Arizona and elsewhere via airplane and vehicles to arrange the marijuana transactions with SILVEYRA.

It was a part of the conspiracy that W.K.BYRD and MUELLER would arrange for BURNS and others both known and unknown to the grand jury to travel to Arizona and transport the large amounts of marijuana from Arizona to the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that W.K.BYRD and MUELLER would purchase vehicles to transport the marijuana from Arizona to the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that W.K.BYRD and MUELLER created a fictitious business entity, *KenMark Distributing*, to conceal their marijuana distribution activities in the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that W.K.BYRD, MUELLER, HAMMONS, and others would invest the proceeds of the illegal

3

narcotics activities into a riverside restaurant, *The Reef Bar*, in an attempt to conceal their distribution activities.

It was a part of the conspiracy that HAMMONS and others used *The Reef Bar* to discuss marijuana distribution activities.

It was a part of the conspiracy that W.K.BYRD, MUELLER, COFFMAN, JEFF GERACI, JOHN GERACI, STANLEY BYRD (hereinafter "S.BYRD"), DARST, RAY, and others both known and unknown to the grand jury would maintain residences in Arizona and/or Ohio for the purpose of concealing, storing, packaging, and distributing large amounts of marijuana and U.S. currency.

It was a part of the conspiracy that W.K.BYRD and MUELLER would distribute the marijuana to BURNS, JOHN GERACI, JEFF GERACI, ANDRE RAY, and others both known and unknown to the grand jury for the purpose of further distribution and/or consumption.

It was a part of the conspiracy that W.K.BYRD and MUELLER would distribute marijuana to **EVANGELISTA, GILLIAM, DAULTON**, and others on behalf of **REED** in the Southern District of Ohio for the purpose of further distribution and/or consumption.

It was part of the conspiracy that **EVANGELISTA, GILLIAM,** and **DAULTON** would further distribute large amounts of marijuana in the Southern District of Ohio and elsewhere.

It was a part of the conspiracy that **PINNELL** would assist **REED** by driving him to pick up drug proceeds from **EVANGELISTA, GILLIAM, W.K.BYRD, MUELLER,** and others.

It was a part of the conspiracy that **PINNELL** would pick up marijuana and/or drug proceeds from W.K.BYRD, MUELLER and **GILLIAM** on behalf of **REED**.

It was a part of the conspiracy that **REED** and a person by the name of "TJ" who is known to the grand jury would use the profits made from distributing marijuana to purchase automobiles, motorcycles, real property in Arizona and in and around the Lima, Ohio area as well as for narcotics for personal consumption and to finance their gambling activities.

It was a part of the conspiracy that **REED** would list the real property he and the person by the name of "TJ" who is known to the grand jury owned in **REED's** name.

It was a part of the conspiracy that, after the person by the name of "TJ" disappeared, **REED** would sell property that he and "TJ" owned in Arizona and provide $70,000 in proceeds from the sale of that property to "TJ's" wife, "PSB".

It was a part of the conspiracy that **PETER YOUNGER SMITH** and **PINNELL** wired the person by the name of "TJ's" wife, "PSB", money on behalf of **REED**.

It was a part of the conspiracy that **PINNELL** would deliver money to other individuals, known and unknown to the grand jury, on behalf of **REED** with the hopes of **REED** securing those individuals' silence about the drug trafficking organization.

It was a part of the conspiracy that JEFF GERACI also distributed marijuana to JOHN GERACI, HAMMONS, and others both

known and unknown to the grand jury for the purpose of further distribution.

It was a part of the conspiracy that W.K.BYRD and MUELLER would maintain personal bank accounts and accounts in the names of others both known and unknown to the grand jury for the purpose of concealing drug proceeds as well as making purchases to facilitate their narcotics activities.

It was a part of the conspiracy that MUELLER would maintain personal and business ledgers accounting for general and specific activities of the drug trafficking organization.

It was a part of the conspiracy that **EVANGELISTA** would use the profits made from distributing marijuana to purchase real property, enjoy vacations, and maintain personal expenses.

It was a part of the conspiracy that members of the conspiracy would utilize firearms and ammunition to protect their illegal activities.

It was a part of the conspiracy that members of the conspiracy would utilize telephones, cellular telephones, and computers to communicate with each other and other members of the conspiracy.

It was a part of the conspiracy that **REED** would continue to provide financial support for members of the conspiracy after they were convicted and imprisoned for their marijuana distribution activities.

**Overt Acts**

In order to further the objects of the conspiracy and in an effort to attain its objectives, the defendant, and others both known and unknown to the grand jury performed among others, the following overt acts:

1.    In or about 1996, **REED** and a person whose name is known to the grand jury purchased a residence located at 13850 North 68th Street, Scottsdale, Arizona.

2.    Between March 7, 2003 and June 13, 2006, SILVEYRA, W.K.BYRD, MUELLER, S.BYRD, DARST, and others used the residence at 7401 East Turquoise Avenue, Scottsdale, Arizona for the purpose of receiving, concealing, repackaging, and distributing marijuana.

3.    On or about October 13, 1993, W.K.BYRD purchased a 1989 GMC Box Truck, VIN # 2GDHG31KOK4518529, to use for the purpose of transporting the marijuana from Arizona to the Southern District of Ohio and elsewhere.

4.    In or about 2004/ 2005, MUELLER began providing **PINNELL** with twenty pound quantities of marijuana at **REED's** direction.

5.    On or about August 16, 2005, W.K.BYRD and MUELLER purchased a 2002 GMC Box Truck, VIN #1GDHG31R021900855, to use for the purpose of transporting the marijuana from Arizona to the Southern District of Ohio and elsewhere.

6.    On or about January 22, 2006, BURNS traveled to 7401 East Turquoise, Scottsdale, Arizona in the 2002 GMC Box Truck for the purpose of picking up a substantial amount of marijuana.

7

7.   On or about January 25, 2006, BURNS returned to 736 Louanne Lane, Loveland, Ohio in the 2002 GMC Box Truck carrying in excess of 1000 pounds of marijuana.

8.   Shortly thereafter, on or about January 25, 2006, MUELLER and COFFMAN offloaded large bundles of marijuana from the back of the 2002 GMC Box Truck and placed some of the marijuana in the cargo area of the F-150 pick up truck and inside the residence.

9.   On or about March 6, 2006, W.K.BYRD traveled to Phoenix, Arizona via airplane.

10.  On or about March 15, 2006, BURNS departed from the Southern District of Ohio driving the 2002 GMC Box Truck.

11.  On or about March 17, 2006, BURNS arrived at 7401 East Turquoise Avenue, Scottsdale, Arizona.

12.  On or about March 17, 2006, MUELLER arrived at the 7401 East Turquoise Avenue address driving a red Lincoln Navigator.

13.  On or about March 18, 2006, BURNS departed from Scottsdale, Arizona driving the 2002 GMC box truck.

14.  On or about March 20, 2006, BURNS drove the 2002 GMC box truck to 736 Louanne Lane, Loveland, Ohio.

15.  Shortly thereafter, on or about March 20, 2006, MUELLER traveled to the Louanne Lane residence and, along with COFFMAN, offloaded large amounts of marijuana from the 2002 GMC Box Truck and placed some of the marijuana inside a green GMC Pickup Truck and some inside the garage of the residence.

16.  On or about March 20, 2006, MUELLER took RAY an amount of

marijuana concealed inside banker boxes at the Blockbuster movie rental store located on Loveland/ Madeira Road, Loveland, Ohio.

17. On or about March 20, 2006, RAY concealed the marijuana he received from MUELLER at his residence at 5722 Argus Road, Cincinnati, Ohio.

18. On or about June 9, 2006, BURNS drove the GMC Box Truck to Arizona for the purpose of picking up a large amount of marijuana.

19. On or about June 13, 2006, BURNS drove the 2002 GMC Box Truck to the Louanne Lane residence and left the vehicle.

20. Shortly thereafter, on June 13, 2006, BURNS traveled to 3644 Church Street, Newtown, Ohio.

21. On or about June 13, 2006, BURNS met with MUELLER at the Church Street residence and MUELLER paid BURNS approximately $13,500 U.S. currency for transporting the marijuana from the State of Arizona to the Southern District of Ohio.

22. On or about June 13, 2006, W.K.BYRD, MUELLER, and COFFMAN possessed approximately 1,421 pounds of marijuana, Smith & Wesson firearm and ammunition; Winchester 1200 12 gauge shotgun and ammunition; IAC Billerica 12 gauge shotgun; 308 rifle ammunition; Colt 45, ammunition and holster; and items used to package, store, and distribute marijuana including plastic gloves, freezer bags, cardboard boxes, tie downs, and scissors at 736 Louanne Lane, Loveland, Ohio.

23. On or about June 13, 2006, MUELLER possessed an amount

of marijuana, a bottle of methadone, $5574 U.S. currency, money counter, Smith & Wesson 38 caliber firearm and ammunition, Ruger black hawk 45 caliber firearm and ammunition at 3644 Church Street, Newtown, Ohio.

24.  On or about June 13, 2006, W.K.BYRD possessed approximately $5,061 U.S. currency, Colt 44 Anaconda revolver, two Deringers, ammunition, two shotguns, and a money counter at 11604 Lebanon Road, Loveland, Ohio.

25.  On or about June 13, 2006, MUELLER possessed a Sentry safe and 38 caliber ammunition at 2219 Clough Ridge, Cincinnati, Ohio.

26.  On or about June 13, 2006, W.K.BYRD, MUELLER, S.BYRD, and SILVEYRA possessed items used to store, package, and distribute marijuana including scales, vacuum pack heat sealer, plastic gloves, packing tape, tape dispensers, drug paraphernalia, a cardboard stencil bearing a "packaged by Kenmark Distributing" design, a machine used to roll boxes onto vehicles and trucks at 7401 East Turquoise Avenue, Scottsdale, Arizona.

27.  On or about June 13, 2006, JEFF GERACI possessed a digital scale, an amount of marijuana, and items used to package, store, and distribute the narcotic at 9234 Link Road, Loveland, Ohio.

28.  On or about June 13, 2006, JOHN GERACI possessed $7,681 U.S. currency, Smith & Wesson model 5906 9 mm firearm and ammunition; Stephens Arms Co. Single shot shotgun; Springfield model 1522 caliber rifle; Marlin pump action model 19 12 gauge

10

shotgun; digital scale; an amount of marijuana; and items used to package, store, and distribute the narcotic at 70 Glendale Milford Road, unit #32, Loveland, Ohio.

29. On or about June 15, 2006, RAY possessed approximately $1,370 U.S. currency, Hi-point 380 caliber pistol; Kurz caliber 380 pistol and ammunition; and a Marlin 30-30 rifle with scope and ammunition at 2720 Robert Avenue, apartment #2, Cincinnati, Ohio.

30. On or about June 15, 2006, RAY possessed a digital scale and items used to package and distribute marijuana at 5722 Argus Road, Cincinnati, Ohio.

31. On or about August 14, 2006, SILVEYRA met with a person known to the grand jury for the purpose of being apprised about the potential disruption in narcotics distribution activities of BYRD, MUELLER, and others in the Southern District of Ohio.

32. On or about September 27, 2006, SILVEYRA traveled to the Southern District of Ohio for the purpose of collecting monies owed on the marijuana seized on June 13, 2006.

33. On or about November 2, 2006, W.K.BYRD, MUELLER and SILVEYRA traveled from the Southern District of Ohio to REED's residence in Lima, Ohio for the purpose of discussing the marijuana trafficking operation and collecting monies owed on the marijuana seized on June 13, 2006.

34. On or about November 9, 2006, W.K.BYRD, MUELLER and

11

SILVEYRA traveled to the Dayton, Ohio office of an attorney they believed represented **REED** for the purpose of W.K.BYRD providing the counsel with a note to give to **REED**.

35.  On or about September 3, 2008, **REED** and a confidential informant discussed the circumstances of MUELLER, SILVEYRA, W.K.BYRD and others with whom **REED** was involved in the distribution of marijuana.  During the discussion, **REED** and the confidential informant discussed who was cooperating with the United States and **REED** asked specifically whether W.K.BYRD could "cause a problem for him [W.K.BYRD] or me **[REED]**?"  Also, **REED** indicated that, once you took the drugs away, there was no one else in the Southern District of Ohio that he "cared to associate with."

36.  On or about December 18, 2008, **REED** and a confidential informant discussed purchasing an amount of marijuana for the purpose of redistribution in the Southern District of Ohio and elsewhere.

37.  On or about June 10, 2009, **REED** and a confidential informant discussed the circumstances of W.K.BYRD, MUELLER and others with whom **REED** was involved in the distribution of marijuana.  During the discussion, **REED** warned the confidential informant to stay away from people and do not discuss the circumstances of the case.

38.  On or about June 20, 2009, **REED** and a confidential informant discuss the circumstances of W.K.BYRD, MUELLER and others with whom **REED** was involved in the distribution of marijuana.

12

During the discussion, **REED** informed the confidential informant that he was worried that particular individuals would "rat" him out and "you cannot pay somebody not to snitch on you."

39.  On or about July 27, 2009, **REED** and a confidential informant discussed the circumstances of MUELLER and others with whom **REED** was involved in the distribution of marijuana.  During the discussion, **REED** informed the confidential informant that MUELLER attempted to "snitch" on him and others at the time of MUELLER's prosecution.

40.  On or about August 7, 2009, **REED** and a confidential informant discussed the circumstances of MUELLER and others whom **REED** was involved in the distribution of marijuana.  During the discussion, **REED** advised the confidential informant on how to get re-started in the transportation of marijuana from Arizona to the Southern District of Ohio.  **REED** advised the confidential informant on how to introduce a potential new driver for the marijuana by stating specifically, "I get a cut too because I told [the guy] about it too."

All in violation of 21 U.S.C. § 846.

## COUNT 2

Beginning in or about January of 1996 and continuing up to and including September of 2010, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendants, **FREDERICK REED, a.k.a. "FREAKY FRED," PETER YOUNGER SMITH, JACKSON BROOKS PINNELL, GEORGE PRIMM, RYAN PRIMM, JOHN MYERS,** and others, known and unknown to the grand jury, did knowingly, wilfully and unlawfully combine, conspire, confederate, and agree with each other to transport, transmit and transfer in interstate commerce any merchandise and money of a value of $5,000.00 or more, knowing that the said merchandise and money had been stolen, in violation of 18 U.S.C. § 2314 and § 2.

It was part of this conspiracy that **REED, SMITH, PINNELL,** and others, known and unknown to the grand jury, would travel from the State of Ohio to the States of Tennessee, Kentucky, Indiana, Illinois, Alabama, Washington, Michigan, Pennsylvania, Georgia, Florida, and others, in order to obtain stolen merchandise from commercial supply stores such as Lowes, Home Depot, and Walmart (hereinafter "commercial supply stores");

It was a part of the conspiracy that **REED** would educate **PINNELL, SMITH, MYERS** and others as to the methods they could employ to avoid detection as they conducted shoplifting activities at the Home Depot, Lowes and WalMart stores;

14

It was a part of the conspiracy that **REED** and others would utilize a trailer owned by **REED** as well as other vehicles to assist them during their shoplifting activities;

It was a part of the conspiracy that **GEORGE PRIMM** would also rent vans to use during the shoplifting activities;

It was a part of the conspiracy that **REED**, **SMITH**, **PINNELL**, **GEORGE PRIMM**, **RYAN PRIMM**, **MYERS** and others would travel from the States of Ohio and Tennessee to other states for the purpose of committing the shoplifting activities;

It was a part of the conspiracy that some of the commercial supply stores in which the organization shoplifted were in the Southern District of Ohio. In addition, the organization generally traveled through the Southern District of Ohio as members targeted stores in other states such as Kentucky, Tennessee and elsewhere.

It was a part of the conspiracy that **SMITH** would create fake state identification cards and drivers licenses for the States of Illinois, Florida, Ohio, Tennessee, Kentucky, Alabama, Georgia, Colorado, and elsewhere so that members of the organization as well as himself could use during their shoplifting activities.

It was a part of the conspiracy that **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others would utilize the fake state identification cards and drivers licenses to carry out their shoplifting activities;

15

It was part of the conspiracy that **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others would employ several shoplifting techniques when they went to the commercial supply stores;

It was a part of the conspiracy that one of the techniques employed by **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others included them entering the commercial supply store and loading two carts with identical items from the store;

It was a part of the conspiracy that once the two carts were loaded with identical items, **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others would conceal one of the carts somewhere in the store while taking the other to the cash register for payment;

It was a part of the conspiracy that **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others would pay for the merchandise loaded in the cart that they took to the cashier and then remove it from the store and load the items into the vehicle;

It was a part of the conspiracy that, after **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others waited a while outside of the commercial supply store, they would reenter the store and locate the second hidden cart which they had concealed inside the store;

It was a part of the conspiracy that, with the receipt from the first cart in hand (which items were loaded in the vehicle outside), **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others would either (1) attempt to walk directly out of the store; (2) pick up another item and walk to the cashier with the attitude that

16

only that item was a new item in the cart; or (3) go to the return desk to return the material in exchange for cash and/or an in-store credit or gift card;

It was a part of the conspiracy that, **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others, would either take the items loaded in the vehicle from the first cart back to either their residences in Ohio or Tennessee or to another commercial supply store and return those items for an in-store credit or gift card;

It was a part of the conspiracy that, if **REED**, **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others returned the stolen items to another commercial supply store, they would utilize the fake state identification cards and drivers licenses which they showed to the cashier;

It was a part of the conspiracy that **REED** and others would purchase the in-store credit and gift cards from **SMITH**, **PINNELL**, **GEORGE** and **RYAN PRIMM** and others for approximately 50% of their face value;

It was a part of the conspiracy that **SMITH** and **PINNELL** would also sell in-store credit and gift cards to others;

It was a part of the conspiracy that **GEORGE PRIMM** would assist **SMITH** and **PINNELL** in finding additional buyers for the in-store credit and gift cards in the States of Kentucky, Tennessee, Florida and elsewhere;

It was a part of the conspiracy that **REED** and others would utilize in-store credit and gift cards and the stolen commercial

17

supply items to maintain their primary and vacation homes as well as numerous rental properties in which they owned (individually and jointly) in and around Lima and Port Clinton, Ohio and elsewhere.

## OVERT ACTS

In furtherance of the conspiracy and in order to effect its objectives, in the Southern District of Ohio and elsewhere, the defendants, **REED, a.k.a. "FREAKY FRED," PETER YOUNGER SMITH, JACKSON BROOKS PINNELL, GEORGE PRIMM, RYAN PRIMM, JOHN MYERS** and another person unknown to the grand jury, did commit at least one of the following overt acts, among others:

1.    In August of 2004, **SMITH** and **MYERS** traveled to commercial supply stores in Chillicothe and Portsmouth, Ohio; Russell, Kentucky; Charleston and Logan, West Virginia, and elsewhere for the purpose of stealing commercial supply items as well as conducting a number of returns for stolen merchandise to fraudulently obtain in-store credit or gift cards on behalf of the organization in the amount of approximately $11,400.

2.    In May 2005, **SMITH** traveled to Lowes commercial supply stores in Louisville, Elizabethtown, and Bowling Green, Kentucky and Nashville, Tennessee, and elsewhere for the purpose of stealing over $5,600 worth of material and fraudulently obtaining in-store credit and gift cards.

3.    In October of 2005, **SMITH** and **MYERS** traveled to a commercial supply store in Marian, Ohio and stole a number of items

as well as conducted a number of returns for stolen merchandise to fraudulently obtain in-store credit or gift cards on behalf of the organization.

4. On December 6, 2006, **REED** and **GEORGE PRIMM** and others purchased in-store gift and credit cards from **SMITH** for approximately $11,500 which were fraudulently acquired from commercial supply stores in Tennessee, Georgia, Alabama and elsewhere.

5. In December of 2007, **SMITH** and **PINNELL** traveled from the State of Ohio to Indiana, Kentucky, Tennessee, Arkansas, Alabama, Mississippi and elsewhere for the purpose of stealing merchandise or fraudulently acquiring in-store credit or gift cards valued at approximately $14,000 from commercial supply stores.

6. In July of 2008, **RYAN PRIMM** conducted a number of returns for stolen merchandise to fraudulently obtain in-store credit or gift cards on behalf of the organization in or around Memphis, Tennessee.

7. On December 22, 2009, **REED** possessed a identification processing machine at his residence, located 2041 Shawnee Road, Lima, Ohio.

All in violation of 18 U.S.C. § 371.

## **FORFEITURE ALLEGATION 1**

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Count 1 above, the defendants shall forfeit to the United States his interests in any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to the following items:

<u>Real Property Known and Numbered as</u>:

1.   1811 Wendell, Lima, Ohio
2.   3800 Shawnee Road, Lima, Ohio
3.   3780 Shawnee Road, Lima, Ohio
4.   540 N. Elizabeth Street, Lima, Ohio
5.   325 N. Pierce Street, Lima, Ohio
6.   317 N. Baxter Street, Lima, Ohio
7.   318 S. Nye Street, Lima, Ohio
8.   724 W. Wayne Street, Lima, Ohio
9.   121 W. McKibben, Lima, Ohio
10.  1308 Leland, Lima, Ohio
11.  954 W. Wayne, Lima, Ohio
12.  223 Harrison, Lima, Ohio
13.  233 S. Collett Street, Lima, Ohio
14.  811 W. Elm Street, Lima, Ohio
15.  1207 W. Market, Lima, Ohio
16.  N. Eastown Road, Lima, Ohio
17.  1160 N. Eastown Road, Lima, Ohio
18.  732 W. Elm Street, Lima, Ohio
19.  770 S. Metcalf, Lima, Ohio
20.  737 E. 3rd Street, Lima, Ohio
21.  752 W. Elm Street, Lima, Ohio
22.  420 S. Pine, Lima, Ohio
23.  558 Ontario, Lima, Ohio
24.  545 Franklin Street, Lima, Ohio
25.  754 W. Elm Street, Lima, Ohio
26.  327 N. Pierce Street, Lima, Ohio

27.  S. Kenilworth Avenue, Lima, Ohio Parcel Id. No. M3836350809020000

28.  210 S. Collett, Lima, Ohio

29.  902 Leland, Lima, Ohio

30.  253 S. Pine, Lima, Ohio

31.  1102 E. 2nd Street, Lima, Ohio

32.  735 W. Elm St, Lima, Ohio

33.  1129 W. Wayne, Lima, Ohio

34.  543 E. 2nd Street, Lima, Ohio

35.  738 E. 3rd Street, Lima, Ohio

36.  948 Leland, Lima, Ohio

37.  240 Harrison, Lima, Ohio

38.  323 N. Pierce Street, Lima, Ohio

39.  1331 St. Johns Avenue, Lima, Ohio

40.  2041 Shawnee Road, Lima, Ohio

41.  723 Spring, Lima, Ohio

42.  703 W. Elm Street, Lima, Ohio

43.  452 N. West Street, Lima, Ohio

44.  2210 Arcadia Avenue, Lima, Ohio

45.  121 N. Kenilworth, Lima, Ohio

46.  130 S. Woodlawn Avenue, Lima, Ohio

47.  1007 E. Eureka Street, Lima, Ohio

48.  S. Kenilworth Avenue, Lima, Ohio Parcel Id. No. M3836350809021000

49.  412 W. Grand Avenue, Lima, Ohio

50.  515 S. Nye Street, Lima, Ohio

51.  803 W. Spring, Lima, Ohio

52.  807 W. Spring, Lima, Ohio

53.  735 W. Spring, Lima, Ohio

54.  739 W. Spring, Lima, Ohio

55.  741 W. Spring Street, Lima, Ohio

56.  805 W. Spring, Lima, Ohio

57.  208 S. Collett Street, Lima, Ohio

58.  513 S. Nye Street, Lima, Ohio

59.  364 Chester Place, Lima, Ohio

60.  714 Franklin, Lima, Ohio

61.  636 N. McDonel, Lima, Ohio

62. 1002 N. West Street, Lima, Ohio
63. 654 S. Union Street, Lima, Ohio
64. 911 S. Harrison, Lima, Ohio
65. 834 North Street, Lima, Ohio
66. 218 South Woodlawn, Lima, Ohio
67. 907 Michael, Lima, Ohio
68. 223 N. Woodlawn Avenue, Lima, Ohio
69. 923 E. Market Street, Lima, Ohio
70. 466 McDonel, Lima, Ohio
71. 618 W. Ford, Lima, Ohio
72. 417 W. Northern Ave., Lima, Ohio
73. 965 Richie, Lima, Ohio
74. 318 N. Collett Street, Lima, Ohio
75. 123 N. Perry, Lima, Ohio
76. 403 Woodlawn, Lima, Ohio
77. 1012 Daniels Avenue, Lima, Ohio
78. 630 E. 3rd Street, Lima, Ohio
79. 1459 Southwood, Lima, Ohio
80. 2242 Arcadia Avenue, Lima, Ohio
81. 314 Collett Street, Lima, Ohio, Lima, Ohio
82. 826 S McDonel, Lima, Ohio, Lima, Ohio
83. 120 Jameson, Lima, Ohio, Lima, Ohio
84. 1519 Southwood, Lima, Ohio, Lima, Ohio
85. 720 Woodward Avenue, Lima, Ohio
86. 1519 High Street, Lima, Ohio, Lima, Ohio
87. 518 McKibben, Lima, Ohio, Lima, Ohio
88. 904 W Kibby, Lima, Ohio, Lima, Ohio
89. 632 McDonel, Lima, Ohio, Lima, Ohio
90. 630 E Albert Street, Lima, Ohio, Lima, Ohio
91. 3057 Allentown Road, Lima, Ohio, Lima, Ohio
92. 121 S Woodlawn, Lima, Ohio
93. 805 Dingledine Avenue, Lima, Ohio
94. 505 Flanders Avenue, Lima, Ohio
95. 792 Atlantic Avenue, Lima, Ohio
96. 609 S. Cable Road, Lima, Ohio
97. 1112 W High, Lima, Ohio
98. 1010 Leland, Lima, Ohio

99.  229 S Collett Street, Lima, Ohio

100. 917 E Market Street, Lima, Ohio

101. 540 W. Haller, Lima, Ohio

102. 1553 Southwood Dr., Lima, Ohio

103. 981 Brice Avenue, Lima, Ohio

104. 166 S. Perry, Lima, Ohio

105. 3141 E. Sand Road, Port Clinton, OH

106. 15519 State Route 37 E, Sunbury, Ohio, Parcel ID: 41643001029000;

107. State Route 37 E, Sunbury, Ohio, Parcel ID:  41643001006002;

108. Dent Road, Sunbury, Delaware County, Ohio, Parcel ID: 41643001006003;

109. 15425 State Route 37 E, Sunbury, Ohio, Parcel Id: 41643001006011

110. 147 Mark Drive, West Union, Ohio

111. 3460 Logans Lane, West Union, Ohio

112. 3558 Logans Lane, West Union, Ohio

113. 426 Hickory Street, West Union, Ohio

114. 167 Lee Street, West Union, Ohio

115. Mark Drive, West Union, Ohio, Parcel Id: 1161402001000

116. State Route 134, Sardinia, Ohio, Parcel No. 052300011900

117. State Route 134, Sardinia, Ohio, Parcel No. 052300011901

**Vehicles:**

A.  1966 Chevrolet Nova VIN. 11376W135359

B.  1996 HD VIN. 1HD1BJL49TY043663

C.  1995 GMC Truck VIN. 2GTEC19H5S1586794

D.  2001 Cadillac VIN. 1G6KD54Y31U218781

E.  1988 Modn Trailer VIN. 1UN102B11J1005563

F.  1997 Jeep SW VIN. 1J4GZ78S0VC603095

G.  2006 Cadillac VIN. 1G6DM57T360181626

H.  2009 Chevrolet SW VIN. 1GNER23D49S166763

I.  1986 Amer SW VIN. 1JCHD7314GT204652

J.  Manitou Pleasure Boat, Hull Id. No. T1155714C292

K.  Stratos Pleasure Boat, Hull Id. No. 8NZ7F151L485

L.  Starcraft Pleasure Boat, Registration No. BC0008

Additionally, the defendants shall forfeit to the United States, under 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to:

a.    a money judgment in the amount of the property involved in the offense; and

b.    the assets of all businesses involved in the offense, including, but not limited to all financial and other accounts involved in the offense.

### SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendants,

(i)      cannot be located upon the exercise of due diligence;

(ii)     has been transferred or sold to, or deposited with, a third person;

(iii)    has been placed beyond the jurisdiction of the Court;

(iv)     has been substantially diminished in value; or

(v)      has been commingled with other property which cannot be subdivided without difficulty:

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated in Title 18, United States Code 982 by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

24

## FORFEITURE ALLEGATION 2

As a result of the violation in Count 2 above, the defendants shall forfeit to the United States, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interests in any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including but not limited to the items listed above in Forfeiture Allegation 1.

**Money Judgment**:

A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense, involved in the offense, or conspiracy to commit the offense, for which the defendant is convicted.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendants,

      (1)   cannot be located upon the exercise of due diligence;

      (2)   has been transferred or sold to, or deposited with, a third person;

      (3)   has been placed beyond the jurisdiction of the Court;

      (4)   has been substantially diminished in value; or

      (5)   has been commingled with other property which cannot be subdivided without difficulty:

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated in Title 18,

25

United States Codè, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

**A True Bill.**

S1

**Grand Jury Foreperson**

**CARTER M. STEWART**
United States Attorney

**ANTHONY SPRINGER**
Cincinnati Branch Chief